JOHN M. SORICH (CA Bar No. 125223)
jsorich@adorno.com
S. CHRISTOPHER YOO (CA Bar No. 169442)
cyoo@adorno.com
KATHERINE S. AGBAYANI (CA Bar No. 213812)
kagbayani@adorno.com
ADORNO YOSS ALVARADO & SMITH
A Professional Corporation
1 MacArthur Place, Suite 200
Santa Ana, California 92707
Tel: (714) 852-6800
Fax: (714) 852-6899

Attorneys for Defendants
CHASE HOME FINANCE LLC and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH RABB, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BNC MORTGAGE, INC., a Delaware Corp.; CHASE HOME FINANCE, LLC, a Delaware Corp.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. a Delaware Corp.; NORTHWEST TRUSTEE SERVICES, INC., a Washington Corp. JOHN and JANE DOES, 1 THROUGH 10,<br><br>Defendants. | **CASE NO.: cv09-4740-AHM (RZx)**<br><br>**JUDGE:** Hon. A. Howard Matz<br><br>**DECLARATION OF S. CHRISTOPHER YOO IN SUPPORT OF PARTIES' STIPULATION FOR DISMISSAL AND PURSUANT TO THE ORDER ISSUED ON AUGUST 11, 2010** |

I, S. Christopher Yoo, declare as follows:

1.     I am a member with the law firm of Adorno Yoss Alvarado & Smith, a

Professional Corporation, attorneys of record herein for defendants Chase Home

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

1144617.2

Finance LLC ("Chase") and Mortgage Electronic Registration Systems, Inc. ("MERS" and collectively "Defendants") in the above-captioned action ("Action").  I have been duly admitted to practice law in the State of California.

2.      I am submitting this Declaration in support of the stipulation entered into between Defendants and plaintiff Elizabeth Rabb ("Plaintiff") to dismiss this matter ("Stipulation for Dismissal") and in response to the Court's order issued on August 11, 2010 ("Order").  If called as a witness in this matter, I am competent to testify of my own personal knowledge, to the best of my recollection, as to the matters set forth in this Declaration.

3.      Pursuant to the Stipulation filed with the Court on or about August 13, 2010, Plaintiff agreed to dismiss the First Amended Complaint ("FAC") against Defendants with prejudice.  *See* Court Docket, No. 41.  In consideration for this dismissal, the parties agreed to attempt to resolve this matter by providing Plaintiff with a loan modification.  Accordingly, Plaintiff provided Defendants with her loan modification application which is still under review.

4.      On May 5, 2010, I took Plaintiff's deposition testimony.  Attached hereto collectively as exhibit "A" are true and correct copies of pages 34 to 37, 42 to 48, 56 to 57, and 64 to 67 of the transcript of Plaintiff's deposition testimony ("Plaintiff's Depo"), including the coversheet and the court reporter's certification.

5.      In response to the Court's Order, Defendants submit that Plaintiff testified at her deposition that she executed the following documents:

     a.  Adjustable Rate and Note.  *See* Plaintiff's Depo, 34:13 to 35:2 and 37:1 to 37:3.

     b.  Addendum to Note.  *See* Plaintiff's Depo, 37:10 to 37:23.

     c.  Subject deed of trust.  *See* Plaintiff's Depo, 42:18 to 42:24.

     d.  Adjustable Rate Rider.  *See* Plaintiff's Depo, 43:10 to 43:20.

     e.  Prepayment Charge Rider.  *See* Plaintiff's Depo, 43:23 to 44:6.

     f.  The truth in lending disclosure statement.  *See* Plaintiff's Depo, 44:7 to

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

44:25.

    g. Loan Servicing Disclosure Statement, Mortgage Broker Fee Disclosure, Notice of Loan Terms, Important Applicant Information and Customer Identification Form. *See* Plaintiff's Depo, 64:14 to 65:12.

    h. Notice of Assignment of Sale Transfer of Servicing Rights. *See* Plaintiff's Depo, 67:3.

6. Plaintiff testified that she was not certain if she signed the Notice of Cancel. *See* Plaintiff's Depo, 45:1 to 47:2. Plaintiff further testified that she did not want to cancel the subject loan. *See* Plaintiff's Depo, 48:13-19. However, Plaintiff testified that she received the Notice to Cancel. *See* Plaintiff's Depo, 56:22 to 57:10.

7. Accordingly, Temesha Rabb <u>did not</u> execute any of the relevant subject documents.

8. In fact, after the deposition of Ms. Rabb, I have been constant communications with Ms. Rabb's family, and they informed me that Ms. Rabb had no intention of maintaining the lawsuit. Ms. Rabb wished to dismiss the lawsuit because the lawsuit was brought by Temesha Rabb, and she wished to engage in loan modification discussions. In this regard, I have forwarded Ms. Rabb a loan modification application, which has been completed, and the loan modification application has been forwarded to Chase for its consideration.

9. I respectfully request that the Court grant the stipulation for dismissal so the parties can informally work on a loan modification rather than litigating this matter which was brought by Ms. Rabb's granddaughter.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 20, 2010at Santa Ana, California.

S. CHRISTOPHER YOO

1144617.2

# EXHIBIT "A'

1   May 22, 2007" you -- "the plaintiff" meaning you had, you

2   know, finished applying for a loan.  And when you read

3   paragraph 15 and 16, it says you obtained a loan from BNC

4   Mortgage Company.  Do you see that?

5       A.  Yes, I remember something about BNC Mortgage

6   Company.

7       Q.  Okay.  So I'm asking these questions to refresh

8   your memory.  Do you recall getting a loan with BNC

9   Mortgage in 2007?  The Complaint, the First Amended

10  Complaint says that you did.  Do you remember getting a

11  loan?

12      A.  They said I did.

13          MR. YOO:  Okay.  I'm going to also mark as

14  Exhibit 3 which is an Adjustable Rate and Note.

15          (Defendant's Exhibit 3 was marked

16          for identification.)

17  BY MR. YOO:

18      Q.  Do you see this marked as Exhibit 3, Adjustable

19  Rate Note?

20      A.  Time and place of payments.

21      Q.  Do you see this Adjustable Rate Note?

22      A.  Oh, up there, uh-huh.

23      Q.  If you could turn to page 4 of 4, I'll show it

24  to you.

25      A.  I signed that.

34

1     Q.   Is that your signature?

2     A.   Yes, that is my signature.

3     Q.   This note says that you borrowed $404,000 from

4  BNC Mortgage.  Does that ring a bell?  Does it trigger

5  your memory that you borrowed 404,000?

6     A.   Like I said, I don't recall this.

7     Q.   Do you remember talking with Tamesha about

8  getting a loan on the 73rd Street property?

9     A.   I don't recall.

10    Q.   You don't remember getting a loan?  Have you

11 been making payments on your house, like mortgage

12 payments?

13    A.   Probably Tamesha been making the payments.

14 She -- like I stated to you before, everything, you have

15 to talk to Tamesha, everything was done by her.  And by

16 me doing what I did, is because of her having confidence

17 in her she was just handling everything.

18    Q.   Sure.  I understand that.  Do you remember?

19    A.   I can't right offhand.  I can't -- I don't know.

20    Q.   Do you remember that in the approximately three

21 years ago Tamesha asking you to refinance the loan on the

22 73rd Street property?

23    A.   I can't recall.

24    Q.   You can't recall?

25    A.   I can't recall.  There's so much I don't know.

35

BARKLEY
Court Reporters

1     Q.  You don't remember?  You do not remember?

2     A.  I'm trying to think.

3     Q.  Sure.  Take your time.  This is your L.A.

4 property.

5     A.  Yeah, the property where I'm living.

6     Q.  Yes.  Exactly.

7     A.  Were you telling to me I owe money on that?

8     Q.  Yes, you do.

9     A.  How much I owe on that?

10     Q.  It is my understanding that you owe in excess of

11 430,000?

12     A.  That's not the loan of the 404, is it?

13     Q.  Yes, it is.  But it is my understanding that you

14 haven't made a payment for the last two years, so all the

15 unpaid payments?

16     A.  Added up?

17     Q.  Yes, you are correct, ma'am.  Did you have an

18 understanding that you borrowed 404,000?

19     A.  I had to in order to get in this predicament.

20     Q.  Yes.  Do you have an understanding that that

21 money was used to pay prior loans on your house, you had

22 prior loans on your house?

23     A.  I don't know.

24     Q.  You do not know?

25     A.  I do --

Elizabeth Rabb

BARKLEY
Court Reporters

1        Q.  But you did sign this note; right?

2        A.  Yeah, I signed it.  She was telling me, "Well,

3    Mommy, sign your name right here."  And signed my name.

4        Q.  Do you remember Tamesha telling you to sign it;

5    correct?

6        A.  Yeah, I remember her telling me to sign it.

7        Q.  Turn to the next page which is Addendum to Note.

8        A.  I don't sign anything unless she tells me to

9    sign it.

10       Q.  Do you see where it says Addendum to Note at

11   top, prepayment penalty charge?  Is that your signature

12   right here?

13       A.  Uh-huh.

14       Q.  Yes?

15       A.  Yes.  Excuse me.

16       Q.  And next one is the prepayment charge right

17   here, do you see that?

18       A.  Yes.

19       Q.  On the second page there's another signature, is

20   that your signature?

21       A.  Yes.

22       Q.  Yes?

23       A.  Yes.

24       Q.  Thank you.  The next document is called Deed of

25   Trust, I'm going to mark it as Exhibit 4.

37

BARKLEY
Court Reporters

1    Q.   Are those your initials?

2    A.   Yes.

3    Q.   On each page do you see these?

4    A.   Yes.

5    Q.   On each of these pages?

6    A.   Yes, that's me.   Yes.

7    Q.   Those are all your initials?

8    A.   Yes.

9    Q.   And I'll turn to page 15 of 22, I'll show it to

10   you.   Do you see right here page 15 of 22?

11   A.   Uh-huh.

12   Q.   Yes?

13   A.   Yes.

14   Q.   You have to say yes or no.

15   A.   Yeah, yes.

16   Q.   Is that your signature?

17   A.   Yes.

18   Q.   Okay.   Do you remember signing this Deed of

19   Trust?   Do you remember signing this?

20   A.   This?

21   Q.   Yes.

22   A.   Yes.

23   Q.   You do remember signing it?

24   A.   Yes.

25   Q.   Did Tamesha ask you to sign it?

42

Elizabeth Rabb

BARKLEY
Court Reporters

1       A.   Yes.

2       Q.   Did she say, "Mommy, this is for a loan that

3    we're getting, sign it?"

4       A.   Whatever it was that she told me, I went for and

5    signed it.

6       Q.   Did you have an understanding that in connection

7    with you signing this it was related to a loan that you

8    were getting?  Did you have that understanding?

9       A.   Yes.

10      Q.   Next one, this is called an Adjustable Rate

11   Rider.  Do you see that, page 17 of 22?

12      A.   Yes.

13      Q.   Third page of that rider is page 19 of 22, is

14   that your signature?

15      A.   Yes, it is.

16      Q.   Do you recall signing it?

17      A.   Yes.

18      Q.   About three years ago?

19      A.   Whenever it was, I remember.  I don't remember

20   the date, but that's my signature.

21      Q.   Okay.

22      A.   That's my signature there, too.

23      Q.   Where it talked about Prepayment Charge Rider

24   which is page 21 of 22, is that your signature?

25      A.   21.

43

BARKLEY
Court Reporters

1        Q.   Page 21 of 22?

2        A.   Yeah, that's me.

3        Q.   Is that your signature?

4        A.   Yes.

5        Q.   Do you remember signing this?

6        A.   Yes.

7        Q.   Okay.   Next I'm going to show as Exhibit 5 a

8    truth in lending disclosure statement.

9             (Defendant's Exhibit 5 was marked

10            for identification.)

11   BY MR. YOO:

12       Q.   Is that your signature on the bottom of page 1

13   of 2?

14       A.   Yes.

15       Q.   Do you recall signing this?

16       A.   Yes.

17       Q.   About three years ago?

18       A.   Yes.

19       Q.   Okay.   Do you remember where you signed this

20   document along with other documents that I just showed

21   you?   Do you remember where, was it an office of a lender

22   somewhere?

23       A.   I don't recall.

24       Q.   But you do recall signing it?

25       A.   Yes, I do.

44

Elizabeth Rabb

BARKLEY
Court Reporters

1    Q.  I'm going to show you a notice of right to
2    cancel, okay, document called Notice of Right to Cancel
3    so I'm going to mark it as Exhibit 6.

4    A.  Explain to me about that cancel, what do you
5    mean?

6    Q.  Sure.  I'm going to explain it to you.  I'm
7    going to first show it to you.

8          (Defendant's Exhibit 6 was marked
9          for identification.)

10   BY MR. YOO:

11   Q.  Do you see on top it says "Notice of Right to
12   Cancel."  Do you see that?

13   A.  What am I going to be canceling?

14   Q.  I'll explain to you, my question is do you see
15   the header, the Notice of Right to Cancel?

16   A.  Yes.

17   Q.  And that's Exhibit 6.  And do you see the
18   signature at the bottom of Exhibit 6, is that your
19   signature?

20   A.  I'm trying to look at this.  This doesn't look
21   like my writing here.

22   Q.  I have another one.  You don't know whether
23   that's yours or not?

24   A.  This right here, sign here doesn't look like me
25   right here.

45

BARKLEY
Court Reporters

1        Q.   Okay.   It doesn't look like yours.

2             Okay.   I have another one I want to show you.

3    I'm going to mark this as Exhibit 7, okay.

4             (Defendant's Exhibit 7 was marked

5             for identification.)

6    BY MR. YOO:

7        Q.   Same document, it appears to be.  Do you see the

8    document marked as Exhibit 7?

9        A.   Yes.

10       Q.   Yes, you're pointing, is that your signature?

11       A.   These two don't look like my signature.

12       Q.   Okay.

13       A.   May I ask you a question?

14       Q.   Sure.

15       A.   Now you look at these two itemized, those two

16   and just look at this in my name, that doesn't -- they

17   don't look the same; right?

18       Q.   I don't know, ma'am, I'm asking you.

19       A.   No, I'm asking you.

20       Q.   To me they all both could be so I don't know.

21   So it looks -- to me it looks similar.

22       A.   Yeah, it looks --

23       Q.   Each -- I know that, for example, when I sign my

24   documents each signature is not exactly the same

25   because --

                              46

BARKLEY
Court Reporters

1      A.  Well, I can't on this, these two because I don't

2  know, this don't look like my handwriting.

3      Q.  I'm asking whether, do you recall signing

4  Exhibit 6 or 7?

5      A.  Explain to me these two, what is the --

6      Q.  Sure.  These two means you have the right to

7  cancel the loan within three days, three days of entering

8  into a loan agreement.  Meaning that if you change your

9  mind after three days, you could elect to cancel the

10  loan, that's what it means.

11      A.  You mean to give up the loan?

12      Q.  Or cancel it, yes.

13      A.  Cancel it?

14      Q.  Yes.

15      A.  If I cancel it, then what happens?

16      Q.  Then you would have to give the money back, the

17  money that you got.

18      A.  Oh, and go forward something else?

19      Q.  That's right, something like that.

20      A.  Well, can I say this?

21      Q.  Sure.

22      A.  At this time since I'm not too sure of these two

23  here, would you advise me to just don't cancel and just

24  going through with it since I've gone this far?

25      Q.  I can't give you any advice because I'm not your

47

Elizabeth Rabb

BARKLEY
Court Reporters

1    attorney.  I'm the attorney for the defendants, Chase

2    Home Finance and Mortgage Electronic Registering Service.

3    I can't give you advice because there's a conflict of

4    interest, I am not your attorney.  And also the purpose

5    of this deposition is for me to ask you questions.

6         A.  I understand.

7         Q.  So --

8         A.  Yeah.

9         Q.  So is that your testimony that you're not sure

10   whether these are your signatures or not?

11        A.  I really don't understand about the canceling.

12   The canceling of this, I've gone all this is okay.

13        Q.  My question is are these your signatures,

14   Exhibit 6 and 7?  You can say you don't know if you want.

15   I mean --

16        A.  Yeah, but I don't want to cancel.

17        Q.  Do you not want to cancel?

18        A.  I don't want to cancel, but this don't look like

19   my signature.

20        Q.  They do not look like your signature?

21        A.  Like I said, if I cancel it then I have to go

22   all over.

23        Q.  No, you're not saying that you're choosing to

24   cancel the loan.  My only question is that you -- that

25   the two signatures at the bottom of Exhibit 6 and 7, are

48

Elizabeth Rabb

BARKLEY
Court Reporters

1      A.   Well, if I say I don't know, that's stating that
2    I didn't get the copy.
3      Q.   I don't know what that means but all --
4      A.   I don't know either.  If you don't know it I --
5      Q.   All I'm asking you is to answer the question, is
6    that your signature?
7      A.   I'm still debating.
8      Q.   You shouldn't think about the outcome of your
9    testimony.  All I'm asking you is -- whatever you're
10   testifying, you shouldn't worry about outcome, but you
11   should -- do you remember that you promised to tell the
12   truth?
13     A.   I'm still going to tell the truth.
14     Q.   You promised to tell the truth under oath.
15     A.   Yes.
16     Q.   So I'm asking you is your signature on Exhibit 6
17   your signature?
18     A.   And I'll say it again, these two does not look
19   like my signature.
20     Q.   Okay.
21     A.   You know.
22     Q.   Okay.  Does that mean that it is not your
23   signature?
24     A.   I don't know what to do.  On these two here, I'm
25   stuck on this.  Everything here looks like my signature

56

Elizabeth Rabb

BARKLEY
Court Reporters

1    except that these last two and these last two you said is

2    whether I received it or not, not the cancellation.

3         Q.   That's right.

4         A.   Just that I received it.

5         Q.   That's right.

6         A.   These two papers that I received on what?  What

7    was --

8         Q.   This means that you're acknowledging that you

9    received two copies of this.

10        A.   Yeah, that I received it.

11        Q.   Yes.

12        A.   So what do these two copies consist of?

13        Q.   It's giving you notice that you can rescind the

14   loan if you want to within three days of executing the

15   loan documents.

16        A.   So that's what this means?

17        Q.   Yes.

18        A.   I can do that, cancel it if I want to cancel it?

19        Q.   Yes, back in May of 2007.

20        A.   These are -- this is just recently.

21        Q.   Excuse me?

22        A.   I said this is May 7th, May 22nd.  Well, it

23   don't look like me but --

24        Q.   Is your answer you don't know then, you don't

25   know with certainty whether it is or it isn't?  Are you a

57

Elizabeth Rabb

BARKLEY
Court Reporters

```
 1        Q.   If you want to take a break, okay, we'll take a
 2   five-minute break.  The court reporter needs a break.
 3             (Discussion held off the record.)
 4             (Defendant's Exhibit 8 was marked
 5             for identification.)
 6             MR. YOO:  I'm going to introduce as Exhibit 8.
 7             THE WITNESS:  So we'll say yes on this.
 8   BY MR. YOO:
 9        Q.   I don't -- back on record.  Do you have -- I'm
10   sorry, you're about to say something off the record?
11        A.   No, I just said I don't want to cancel.
12        Q.   You do not want to cancel?
13        A.   No.
14        Q.   Okay.  I'm going to mark as Exhibit 8, a
15   collection of documents under the heading "Loan Servicing
16   Disclosure Statement, do you see Exhibit 8 in front of
17   you?
18        A.   Uh-huh.
19        Q.   The first page of Exhibit 8, is that your
20   signature?
21        A.   Yes.
22        Q.   Take a look at the second page of Exhibit 8
23   under appraisal notice, is that your signature?
24        A.   Yes.
25        Q.   Take a look at third page of Exhibit 8 under
```

64

BARKLEY
Court Reporters

1    Mortgage Broker Fee Disclosure, is that your signature?

2        A.  Yes.

3        Q.  On Exhibit -- page 4 of Exhibit 4, Important

4    Notice of Loan Terms, is that your signature?

5        A.  Yes.

6        Q.  On page 5 of Exhibit 8, is that your signature

7    under header Important Applicant Information?

8        A.  Yes.

9        Q.  And look at exhibit page, page 6 of Exhibit 8

10   under Customer Identification Form, is that your

11   signature?

12       A.  Yes.

13       Q.  I'm sorry, that's not -- it's not that's -- is

14   that your signature under License right here?

15       A.  Yes, that's me.

16       Q.  And it looks like on page -- following page on

17   page 8, is that your signature what appears to be a

18   photocopy of your driver's license?

19       A.  Yes.

20       Q.  Is that your print, Elizabeth Rabb?

21       A.  Yes, I'll just say yes.

22       Q.  What is the telephone number 949-852-3794, does

23   that telephone number have any significance?

24       A.  I don't know what that number's for.  949?

25       Q.  You don't recognize it?

65

Elizabeth Rabb

BARKLEY
Court Reporters

1          A.   No.

2          Q.   The next one is page 16 of 16.   There's an --

3     under the header Applicant Acknowledges, is that your

4     signature with the date May 22, 2007?

5          A.   Yes.

6               MR. YOO:   I'm going to mark as Exhibit 9 which

7     is a HUD-1 statement.

8               (Defendant's Exhibit 9 was marked

9               for identification.)

10    BY MR. YOO:

11         Q.   Have you ever seen this document marked as

12    Exhibit 9 before?

13         A.   You mean what I have in front of me here?

14         Q.   Yes.

15         A.   No, I don't remember seeing this.

16         Q.   Prior to you obtaining a loan from BNC for

17    404,000, did you have an understanding you had two prior

18    loans, you had one with Home EC and second loan with Bank

19    of America?   Do you know you had two loans on your Los

20    Angeles 73rd Street property?

21         A.   No.   Oh, boy, she messed me up.   She really

22    messed me up.

23         Q.   You did not know you had two loans prior to

24    that?

25         A.   No, I didn't know.

                              66

BARKLEY
Court Reporters

1      Q.   Your first loan was with Home EC?

2      A.   See, like I stated to you before, I didn't know

3   because she's doing all of the procedures and she just

4   said, "Well, we doing such thing she says sign this, sign

5   this.

6      Q.   You had for approximately -- for approximately

7   245,000 on your first loan and you're approximately

8   50,000 on your second loan.  Did you know that?

9      A.   Huh-huh.

10     Q.   No, no?

11     A.   I didn't know that because I don't -- like I

12  stated to you, I don't know.

13     Q.   Did you know that -- do you remember getting an

14  approximately $51,000 cash out from the BNC loan, meaning

15  that you got $51,000 in cash?

16     A.   When?

17     Q.   In 2007?

18     A.   Huh-huh, I don't recall.

19     Q.   Okay.

20     A.   I don't recall that.  Because a lot of these

21  papers I didn't look at, do you know what I mean?  I

22  don't recall.

23     Q.   I'm going to mark as Exhibit 10 Notice of

24  Assignment of Sale Transfer of Servicing Rights.  Is that

25  your signature on Exhibit 10?

67



**PROOF OF SERVICE**

## STATE OF CALIFORNIA, COUNTY OF ORANGE
*Rabb v. BNC Mortgage, Inc., et al.*
USDC Case No.: cv09-4740-AHM (RZx)

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Santa Ana, CA 92707**.

On AUGUST 20, 2010, I served the foregoing document described as **DECLARATION OF S. CHRISTOPHER YOO IN SUPPORT OF PARTIES' STIPULATION FOR DISMISSAL AND PURSUANT TO THE ORDER ISSUED ON AUGUST 11, 2010** on the interested parties in this action.

☒     by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒     **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐     **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐     **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐     **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒     (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on August 20, 2010, at Santa Ana, California.

*Patrick Mitchell*
PATRICK MITCHELL

1093065.1

1

## **SERVICE LIST**

2

*Rabb v. BNC Mortgage, Inc., et al.*
USDC Case No.:  cv09-4740-AHM (RZx)

3

4   Elizabeth Rabb                            Attorneys for
    1336 West 73rd Street                     Telephone:  (323) 778-4607
5   Los Angeles, CA  90044

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

1093065.1